**E-FILED**
Wednesday, 14 November, 2012  10:03:48 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
(SPRINGFIELD DIVISION)

| | | |
|---|---|---|
| TIMOTHY E. RYAN, AND | ) | |
| BRANDON HARGRAVE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | No. |
| DEPUTY TRAVIS KOESTER | ) | |
| IN HIS INDIVIDUAL AND | ) | |
| OFFICIAL CAPACITIES at the Sangamon | ) | |
| County Sheriff's Office; and | ) | |
| | ) | |
| SANGAMON COUNTY; | ) | |
| Defendants. | ) | |

## COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs, TIMOTHY E. RYAN and BRANDON HARGRAVE by and

through their attorneys, Daniel Noll and Jon Noll of the Noll Law Office, LLC, and in support of

their Complaint and Jury Demand states as follows:

### NATURE OF CASE

1.      This suit arises pursuant to 42 U.S.C. § 1983 to address deprivations of Plaintiffs

rights under the Constitution of the United States.

### JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28

U.S.C. § 1331 and 28 U.S.C. 1367(a).

### VENUE

3.      The violations of civil rights alleged herein were committed within the Central

District of Illinois, to wit: in the City of Springfield, County of Sangamon, State of Illinois. This

action properly lies in the United States District Court for the Central District of Illinois, Springfield Division.

## PARTY PLAINTIFFS

4.      Timothy Ryan is a United States Citizen. He is a resident of the City of Springfield, County of Sangamon, State of Illinois.

5.      Brandon Hargrave is a United States Citizen. He is a resident of the City of Springfield, County of Sangamon, State of Illinois.

6.      The Plaintiffs were unlawfully arrested and unlawfully charged with Driving Under the Influence of Alcohol ("DUI") by Deputy Travis Koester in Sangamon County, which is in the Central District of Illinois.

## PARTY DEFENDANTS

7.      In his individual and official capacity, Deputy Travis Koester is joined as a Party Defendant herein because he is a present employee and agent of the Sangamon County Sheriff's Office. At all relevant times, Deputy Koester acted under color of law as a duly appointed Sangamon County Sheriff's Deputy and within the scope of his employment.

8.      Sangamon County is the legal entity which contracted with Deputy Koester. It is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees, and for injury occasioned thereby. It was or is the employer of Deputy Koester.

## FACTUAL BACKGROUND

9.      Upon information and belief, it is alleged that Deputy Koester is the step-son of Lieutenant Jeff Berkler of the Sangamon County Sheriff's Office. Deputy Koester joined the

2

Sheriff's Office in 2004 after working as a court security guard in the Sangamon County Complex.

10.     Upon information and belief, the Sangamon County Sheriff's Office waived part of the necessary educational requirements of Deputy Koester.

11.     Upon information and belief, Deputy Koester had an overwhelming number of complaints and infractions during his probationary period at the Sangamon County Sheriff's Office and should never have been retained as a full time deputy.

12.     Since at least 2011, Deputy Koester has engaged in a continuing course of conduct, in part motivated by monetary gain, but also as a requirement pursuant to an agreement between the Sangamon County Sheriff's Office and the Illinois Department of Transportation ("LAP Agreement"), to deprive the Plaintiff and others of their constitutional rights.

**Local Alcohol Program**

13.     On November 12 and 15, 2011, respectively, Lt. W. Cearlock of the Sangamon County Sheriff's Office and Sangamon County Board Chairman Andy Van Meter signed the Illinois Department of Transportation's Highway Safety Project Agreement, Conditions and Certifications for the Local Alcohol Program, a copy of which is attached as Exhibit 1 and herein incorporated by this reference.

14.     This Agreement with the Illinois Department of Transportation gave or will give grant money to the Sangamon County Sheriff's Office for use in a Local Alcohol Program ("LAP"). (Ex. 1, pg. 2)

15.     For over 17 years, the Sangamon County Sheriff's Office has used the LAP grant money as a partnership with Illinois Department of Transportation's Division of Traffic Safety to

3

fund overtime for DUI enforcement patrols, holiday campaigns, and media to educate the public about the consequences of driving impaired. (Ex. 1, pg. 5)

16.     Under the LAP Agreement, Sangamon County committed one full time deputy "to roving patrols with an added focus on safety belt and child passenger restrain enforcement and other alcohol related violations." (Ex. 1, pg. 6)

17.     Deputy Travis Koester was the person assigned to that detail in May of 2011.

## BOUNTY AND QUOTA REQUIREMENTS

18.     According to the LAP Agreement, Deputy Koester will:

A.  attempt to make one motorist contact for every 60 minutes of patrol;

B.  be required to make one DUI arrest for every 10 hours of patrol;

C.  be required to make one alcohol related contact every six hours of patrol;

D.  be required to process DUIs in under 2 hours; and

E.  be required to participate in mandatory campaign media events. (Ex.1, pgs. 5-6)

19.     Under the LAP Agreement, if Deputy Koester fails to meet his quota, the Sangamon County Sheriff's Office would lose up to $101,704.80. (Ex. 1, pg. 10)

20.     The LAP Agreement states that Deputy Koester's main focus will be on DUI violators and will work from 7:00 p.m. to 4:00 a.m. (Ex.1, pg. 6)

21.     The LAP Agreement's sole concern is the quantity of arrests.

22.     The LAP Agreement incentivizes arrests creating a bounty and quota system whereby innocent citizens are being arrested in order to maintain funding for the Sangamon County Sheriff's Office and for payment of Deputy Koester's overtime court appearances.

4

23.     The LAP Agreement's focus and intent, as well as Deputy Koester's, is solely on the quantity of arrests and not the guilt or innocence of the arrestee.

### DEPUTY KOESTER'S COURSE OF CONDUCT

24.     Deputy Koester has established a course of conduct which includes stopping unimpaired drivers without probable cause and charging them with Driving Under the Influence, as part of an ongoing scheme to meet the aforementioned arrest quotas, bounty programs and for overtime pay for court appearances.

25.     In furtherance of this course of conduct, Deputy Koester has and continues to dissemble, lie and coerce the truth in court appearances and police reports.

26.     As part of this course of conduct, Deputy Koester administered the Standardized Field Sobriety Performance Tests to all of his arrestees in non-compliance with Sangamon County and National Highway Traffic Safety Administration procedures and then falsified police reports and testimony to indicate that he did comply with all of the procedures.

27.     As part of this course of conduct, Deputy Koester falsely testified in police reports and in court, with striking similarity, that his arrestees fail field sobriety tests.

28.     As part of this course of conduct, Deputy Koester routinely testified in his reports that drivers, including the Plaintiffs, had "a strong odor of an alcoholic beverage[s]," "strong odor of burnt cannabis," "demonstrates nystagmus," "very dilated pupils," "slurred speech," "mumbled speech," "swayed," "difficulty getting in the starting position [for the tests], and "glassy and bloodshot eyes."

29.     The striking similarity between each of Deputy Koester's reports and the repetitious word choice are not coincidence, but rather a *modus operandi* utilizing a purposeful use of language designed to create the appearance of probable cause and sustain a verdict.

30.     As part of this course of conduct, if the arrestee hired an attorney who challenges the arrest, as the Plaintiffs did, the Deputy will testify that he does not remember the incident because of the overwhelming number of people he arrests or lie in court to try and sustain a verdict.

31.     Upon information and belief, Deputy Koester has arrested and charged over 300 people with DUI since he began as the designated DUI Deputy for the Sangamon County Sheriff's Office in May 2011.

32.     Upon information and belief, Deputy Koester has arrested the most people in the State of Illinois for DUI between May 2011 and May 2012.

33.     Upon information and belief, Deputy Koester has arrested nearly 100 people more than any other officer in the State of Illinois between May 2011 and May 2012.

34.     On numerous occasions, Chief Deputy Jack Campbell has acknowledged that there have been issues with Deputy Koester's "in court performance."

35.     Captain Joseph Roesch was instructed and did observe Deputy Koester's court appearances based upon recent judicial rulings including the ruling in the Plaintiffs' cases.

36.     Deputy Koester is still a full-time active duty Sheriff's Deputy at the Sangamon County Sheriff's Office.

37.     Deputy Koester has not been disciplined regarding this course of conduct.

## DRIVING UNDER THE INFLUENCE

38.     Upon information and belief, it is extremely stressful, disconcerting, and embarrassing to be arrested for DUI. This is understandable given:

    A. Driving Under the Influence of Alcohol ("DUI") is a Class A Misdemeanor
       and is punishable by up to 364 days in jail and a $1500 fine; and

    B.  When a person is arrested for DUI their driver's license is suspended for a minimum of 6 months.

39. Upon information and belief, there is a tremendous economic impact to a person who is arrested for DUI including:

    A.  Attorney's fees;

    B.  Tow fees;

    C.  Bond fees;

    D.  Loss of driving privileges;

    E.  Lost wages;

    F.  Employment concerns;

    G.  Court costs.

## ARREST OF TIMOTHY E. RYAN

40.     On May 16, 2012, at approximately 11:42 p.m., Deputy Travis Koester, acting under the color of law as a Sangamon County Sheriff's Deputy, arrested Timothy Ryan for the offenses of Driving Under the Influence of Alcohol and Possession of Cannabis under 2.5 grams.

41.     This arrest became Sangamon County Case 2012 DT 626.

42.     Pursuant to the Warning to Motorist Mr. Ryan received, a copy of which is attached as Exhibit 2 and herein incorporated by this reference, Mr. Ryan's license, should he have lost the Statutory Summary Suspension Hearing, would have been suspended for a minimum of one year because he refused to complete all chemical tests.

43.     This arrest involved a common set of improper practices by Deputy Koester.

44.     The Plaintiff's arrest was the result of the institution of false charges for personal gain or to meet arrest quotas or state sanctioned bounty programs.

45.     On May 18, 2012, Timothy Ryan, by and through his attorney, John "Jake" Kelley, filed a Petition to Rescind his Statutory Summary Suspension.

46.     On June 22, 2012, there was a hearing held on that motion in front of the Honorable John M. Madonia.

47.     All parties were given a full and fair opportunity to present all evidence at that hearing.

## STATUTORY SUMMARY SUSPENSION HEARING

48.     According to a certified copy of the court transcript prepared by court reporter Nancy Horath, a copy of which is attached as Exhibit 3 and herein incorporated by this reference, the Honorable John "Mo" Madonia heard testimony from Deputy Koester and Leland Grove Officer Kenton Oliver.

49.     Deputy Koester testified that he did not "specifically recall if [he] was sitting or moving" while he was on routine patrol and first observed the Mr. Ryan's vehicle. (Ex. 3, pg. 6, line 14-15).

50.     As Judge Madonia astutely pointed out, "He doesn't recall if he was sitting, driving, something drew his attention to a black Ford something or rather." (Ex. 3, pg. 7, line 16-19).

51.     When asked what drew his attention to a black Ford Focus travelling northbound on Chatham Road, which was later identified to be the Mr. Ryan's vehicle, Deputy Koester responded, "Whatever I wrote in my report, sir." (Ex. 3, pg. 7, line 12).

52.     After reading his report for the second time, Deputy Koester finally stated that "[the Black Ford Focus] crossed over a clearly marked double yellow line" and that he was

moving behind the vehicle when he saw this alleged traffic violation. (Ex. 3, pg. 8, line 18, 19; pg. 8, line 22-23).

53.     Deputy Koester testified that he continued to follow the vehicle after he observed this traffic violation. (Ex. 3, pg. 10, line 7).

54.     Deputy Koester purportedly also saw Mr. Ryan cross over a marked stop line "well past the stop sign into the intersection." (Ex. 3, pg. 13, line 1-2).

55.     After Mr. Kelley showed Deputy Koester photographs of the intersection and a picture of the street signs, copies of which are attached as Group Exhibit 4 and herein incorporated by this reference, where Mr. Ryan purportedly committed this second offense, Deputy Koester could not identify the intersection. (Ex. 3, pg. 13, line 11-12).

56.     Deputy Koester testified that his video equipment was not functioning properly when Mr. Ryan performed the Standardized Field Sobriety Tests. (Ex. 3, pg. 12, line 6-7).

57.     The video from Deputy Koester's squad car, a copy of which is attached as Exhibit 5 and herein incorporated by this reference, recorded 36 minutes of video after the field sobriety tests are completed. (Exhibit 5).

58.     Records obtained from the Sangamon County Sheriff's Office, a copy of which is attached as Exhibit 6 and herein incorporated by this reference, demonstrate that Deputy Koester's video equipment was last repaired on May 19, 2012.

59.     Deputy Koester testified that he observed an odor of alcoholic beverages coming from Mr. Ryan's breath. (Ex. 3, pg. 15, line 9-10).

60.     Deputy Koester testified that Mr. Ryan consumed alcoholic beverages. (Ex. 3, pg. 15, line 10-11).

61.    Deputy Koester testified that he smelled a strong odor of burnt cannabis coming from Mr. Ryan's vehicle and his clothing.(Ex. 3, pg. 15, line 22-23).

62.    Deputy Koester testified that a strong odor is equivalent to an "obvious odor." (Ex. 3, pg. 16, line 23).

63.    Deputy Koester testified that Mr. Ryan's speech was "slurred" and that he was mumbling his words. (Ex. 3, pg. 17, line 14, 18).

64.    Leland Grove Police Officer Kenton Oliver testified that while searching Mr. Ryan's vehicle, he did not detect the odor of cannabis. (Ex. 3, pg. 42, line 9).

65.    Officer Oliver further testified that during a conversation where he was two to three feet away from Mr. Ryan he did not smell any cannabis. (Ex. 3, pg.43, line 7; pg. 44, line 3).

66.    In addition, Officer Oliver testified that Mr. Ryan did not have any issues with his balance nor did he have any obvious signs of impairment. (Ex. 3, pg. 45, line 11).

## **COURT'S RULING**

67.    According to the official transcript, after each party had a full and fair opportunity to present evidence, Judge Madonia rendered the following opinion:

> I'm not sure I received one iota of credible evidence that could be
> used to sustain either the stop or the arrest in this case. You have
> an officer who doesn't even remember if he was stopped, standing,
> inside, outside, driving, not driving, in the backseat of a car when
> he witnesses a traffic violation, and then he reads a report that
> completely refreshes his recollection, he remembers he was behind
> the vehicle, then, when he sees it, but the problem is that same

report that he relied on to sustain the probable cause, or so he thought, in this case, he then later said it was factually incorrect when he says that he stopped at the light, came to a stop, now he's questioning the only report that he was relying on to use to justify the stop in the first place.

This is so convolutedly crappy, for lack of a better word, and I don't know if this is just a matter of people being on vacation, somebody being in training, but I'm going to tell you now, if we're going to continue to have these types of hearings, I expect there be a little better evidence than there was here today.

I'm finding no probable cause to stop that vehicle, no reasonable grounds to place him under arrest, and it's based 100 percent on the credibility of the testimony that I heard in this courtroom here this afternoon.

And I'm here to tell you now, you can work out whatever agreement you want with respect to all this stuff, whatever. I'd have a little trouble finding anyone guilty of anything coming out of this stuff…

I am here based on the testimony from that witness stand. (Ex. 3, pg. 48-50).

### DISPOSITION OF CRIMINAL CASE

68.    On August 13, 2012, all charges against Mr. Ryan were dismissed in a manner indicative of his innocence.

## ARREST OF BRANDON HARGRAVE

69.     On March 17, 2012, at approximately 9:35 p.m., Deputy Travis Koester, acting under the color of law as a Sangamon County Sheriff's Deputy, arrested Brandon Hargrave for the offense of Driving Under the Influence of Alcohol.

70.     This arrest became Sangamon County Case 2012 DT 366.

71.     Pursuant to the Warning to Motorist Mr. Hargrave received, a copy of which is attached as Exhibit 7 and herein incorporated by this reference, Mr. Hargrave's license, should he have lost the Statutory Summary Suspension Hearing, would have been suspended for a minimum of six months because he submitted to all chemical tests.

72.     This arrest was the result of the institution of false charges for personal gain or to meet arrest quotas or state sanctioned bounty programs.

73.     On April 4, 2012, Brandon Hargrave, by and through his attorney, James Elmore, filed a Petition to Rescind his Statutory Summary Suspension.

74.     On May 4, 2012, there was a hearing held on that motion in front of the Honorable Christopher Perrin.

75.     All parties were given a full and fair opportunity to present all evidence at that hearing.

## STATUTORY SUMMARY SUSPENSION HEARING

76.     According to a certified copy of the court transcript prepared by the court reporter Christina Reibeling, a copy of which is attached as Exhibit 8 and herein incorporated by this reference, the Honorable Christopher Perrin heard testimony from Brandon Hargrave and Deputy Koester.

77.     Deputy Koester testified that Mr. Hargrave's vehicle "made a left turn and had cut across several lanes." (Ex. 8, pg. 33, line 9-10).

78.     According to Deputy Koester's squad car video, a copy of which is attached as Exhibit 9 and herein incorporated by this reference, those traffic violations are not recorded. (Ex. 8, pg. 33, line 15).

79.     Deputy Koester further testified that he observed two additional traffic offenses, lane change without a signal and improper lane usage. (Ex. 8, pg. 33, lines 22-23).

80.     Deputy Koester requested Brandan Hargrave complete filed sobriety.

81.     Mr. Hargrave passed all field sobriety tests.

82.     Deputy Koester testified that Mr. Hargrave failed the Walk and Turn Test.

83.     In his report, a copy of which is attached as Exhibit 10 and herein incorporated by this reference, Deputy Koester stated that Mr. Hargrave failed the Horizontal Gaze Nystagmus Test ("HGN").

84.     Judge Perrin barred any testimony regarding the HGN because it was administered improperly. (Ex. 7, pg. 7, lines 5-8).

85.     Deputy Koester then requested Mr. Hargrave to submit to a portable breath test ("PBT").

86.     Deputy Koester testified under oath that he observed Mr. Hargrave for the necessary 20 minute observation period before administering the PBT.

87.     The parties stipulated that Deputy Koester only observed Mr. Hargrave for 18 minutes.

88.     The breath sample given, which registered a .108, was unreliable given Mr. Hargrave's testimony that he belched prior to the administration of the PBT.

## COURT'S RULING

89.     According to the official transcript, after each party had a full and fair opportunity to present evidence, Judge Perrin rendered the following opinion:

> Okay. Let me just make a general observation before I go into my decision. When I first watched the tape for the very first time and I saw him go through the walk-and-turn, and the leg lift. And the Office Koester calls him over – truthfully, I thought he was going to – and the he asked him how much he had to drink. I thought he was going to let him go, even knowing we're here today, that was what I expected. It just, that's how he acted. I think in his mind, he had passed the walk-and-turn and leg lift. In my mind, watching it at least two times today, maybe three times, and I've seen, you're right, there's a lot of subjectivity in those tests. I've seen those tests on tapes hundreds of times. I've talked to state troopers about what to look for. And in my opinion, he passed the walk-and-turn. And in my opinion he passed the leg lift. And I don't believe there was probable cause for the breath test.
>
> Let me go one step further: From what I hear, it doesn't appear that the breath test was administered properly. Moreover, what he's testifying to and what he's writing in his report are two different things and it leads me to believe that the guy is making it up as he goes along. So it severely –it doesn't help his credibility any. (Ex. 7, pages 71-72).

## DISPOSITION OF CRIMINAL CASE

90.     On May 29, 2012, the DUI charge against Mr. Hargrave was dismissed in a manner indicative of his innocence.

## COUNT I – FALSE ARREST BY DEPUTY KOESTER IN HIS OFFICIAL CAPACITY

91.     The Plaintiffs restate and reallege all previously plead paragraphs.

92.     Deputy Koester knowingly arrested Plaintiffs.

93.     These arrests were made without probable cause or other justification.

94.     These arrests were made under color of law and within the scope Deputy Koester's employment at the Sangamon County Sheriff's Office.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Timothy Ryan and Brandon Hargrave, pray for judgment against Sangamon County Sheriff Deputy Travis Koester and Sangamon County as follows:

A.  A declaration that the acts and practices complained of herein are in violation of 42 U.S.C. § 1983;

B.  Compensatory damages in an amount to be determined at trial;

C.  Reasonable attorney's fees and costs; and

D.  For such other and further relief as this court deems reasonable.

## COUNT II – FALSE ARREST BY DEPUTY KOESTER

## IN HIS INDIVIDUAL CAPACITY

95.     The Plaintiffs restate and reallege all previously plead paragraphs.

96.     Deputy Koester knowingly arrested Plaintiffs.

97.     These arrests were made without probable cause or other justification.

98.     These arrests were made under color of law and within the scope Deputy Koester's employment at the Sangamon County Sheriff's Office.

99.     These arrests were made with callous disregard for Plaintiff's constitutional rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Timothy Ryan and Brandon Hargrave, pray for judgment against Travis Koester as follows:

A.  A declaration that the acts and practices complained of herein are in violation of 42 U.S.C. § 1983;

B.  Compensatory damages in an amount to be determined at trial;

C.  Punitive damages in an amount to be determined at trial;

D.  Reasonable attorney's fees and costs; and

E.  For such other and further relief as this court deems reasonable.

## COUNT III – FALSE IMPRISONMENT BY DEPUTY KOESTER IN HIS OFFICIAL CAPACITY

100.     The Plaintiffs restate and reallege all previously plead paragraphs.

101.     Deputy Koester arrested Plaintiffs without reasonable grounds to believe that a criminal offense had been committed.

102.     Deputy Koester's conducting in committing these acts was willful, wanton, and without regard for the constitutional rights of the Plaintiffs.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Timothy Ryan and Brandon Hargrave, pray for judgment against Sangamon County Sheriff Deputy Travis Koester and Sangamon County as follows:

A. A declaration that the acts and practices complained of herein are in violation of 42 U.S.C. § 1983;

B. Compensatory damages in an amount to be determined at trial;

C. Reasonable attorney's fees and costs; and

D. For such other and further relief as this court deems reasonable.

## COUNT IV – FALSE IMPRISONMENT BY DEPUTY KOESTER

## IN HIS INDIVIDUAL CAPACITY

103.    The Plaintiffs restate and reallege all previously plead paragraphs.

104.    Deputy Koester arrested Plaintiffs without reasonable grounds to believe that a criminal offense had been committed.

105.    Deputy Koester's conducting in committing these acts was willful, wanton, and without regard for the constitutional rights of the Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Timothy Ryan and Brandon Hargrave, prays for judgment against Sangamon County Sheriff Deputy Travis Koester as follows:

A.  A declaration that the acts and practices complained of herein are in violation of 42 U.S.C. § 1983;

B.  Compensatory damages in an amount to be determined at trial;

C.  Punitive damages in an amount to be determined at trial;

D.  Reasonable attorney's fees and costs; and

E.  For such other and further relief as this court deems reasonable.

### COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY DEPUTY KOESTER IN HIS OFFICIAL CAPACITY

106.    The Plaintiffs restate and reallege all previously plead paragraphs.

107.    The above-detailed conduct by Deputy Koester was extreme and outrageous, exceeding all bounds of human decency.

108.    Deputy Koester's lying and perjury were performed, in part, with the intent of, or knowledge that it was likely to inflict sever emotional distress on the Plaintiffs.

109.    As a direct and proximate result of this conduct, the Plaintiffs did suffer severe emotional distress.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Timothy Ryan and Brandon Hargrave, pray for judgment against Sangamon County Sheriff Deputy Travis Koester and Sangamon County as follows:

A. Judgment be entered in favor the Plaintiffs;

B. Compensatory damages in an amount to be determined at trial;

C. Reasonable attorney's fees and costs; and

D. For such other and further relief as this court deems reasonable.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY DEPUTY KOESTER IN HIS INDIVIDUAL CAPACITY

110.    The Plaintiffs restate and reallege all previously plead paragraphs.

111.    The above-detailed conduct by Deputy Koester was extreme and outrageous, exceeding all bounds of human decency.

112.    Deputy Koester's lying and perjury were performed, in part, with the intent of, or knowledge that it was likely to inflict sever emotional distress on the Plaintiffs.

113.    As a direct and proximate result of this conduct, the Plaintiffs did suffer severe emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Timothy Ryan and Brandon Hargrave, pray for judgment against Travis Koester as follows:

A.  Judgment be entered in favor the Plaintiffs;

B.  Compensatory damages in an amount to be determined at trial;

C.  Punitive damages in an amount to be determined at trial;

D.  Reasonable attorney's fees and costs; and

E.  For such other and further relief as this court deems reasonable.

### COUNT IX – INDEMNITY

114.    The Plaintiffs restate and reallege all previously plead paragraphs.

115.    Party Defendant Sangamon County is the employer of Deputy Koester.

116.    Deputy Koester committed the acts alleged above under the color of law and in the scope of employment as an employee of Sangamon County.

117.    There was absence of probable cause for each such proceeding.

118.    Deputy Koester initiated those proceedings with malice.

119.    As a proximate cause of the above actions, the Plaintiffs were injured.

### PRAYER FOR RELIEF

**WHEREFORE**, should Deputy Koester be found liable for one or more of the claims set forth above, Plaintiffs demands that, pursuant to 745 ILCS 10/9-102, Sangamon County be found liable for any compensatory judgment Plaintiffs obtain against said Party Defendant, as well as attorney's fees and costs awarded, and for such other and further relief as this court deems reasonable.

Respectfully submitted,

TIMOTHY RYAN and BRANDON HARGRAVE, Plaintiffs,

By:   _Daniel Noll_

Daniel Noll

Daniel Noll
**NOLL LAW OFFICE**
1201 South Sixth Street
Springfield, IL 62703
(217) 544-8441
(217) 544-8775 (FAX)
Email: dannoll@noll-law.com